**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CALEB NELSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:17-cv-00687** |
| | ) | **Chief Judge Crenshaw** |
| **CARL BLACK CHEVROLET OF NASHVILLE, LLC, (d/b/a ) CARL BLACK CHEVROLET,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

This case presents several interesting questions, and, so far as the Court can tell, one novel issue regarding the scope and enforceability of an arbitration agreement. They arise in the context of a "Motion for Stay Pending Arbitration" (Doc. No. 16) filed by Carl Black Chevrolet of Nashville, LLC ("Carl Black"), which Caleb Nelson ("Nelson) opposes (Doc. No. 20). For the reasons that follow, the Motion for Stay will be granted.

### I. Factual Background

Only a few undisputed facts are necessary to place the parties' arguments in context. On January 6, 2016, Nelson began working as a Sales Manager for Carl Black. A week or so earlier, he signed various employment related documents, including an Agreement to Arbitrate Claims ("Agreement").

The Agreement contained the following provision regarding its scope:

> Any claim that otherwise would have been decidable in a court of law – whether under local, state, or federal law or otherwise – will instead be heard by arbitration. The claims covered by this Agreement include, but are not limited to, the enforceability and/or interpretation of this Agreement; whether a claim is arbitrable;

> . . . claims for discrimination or harassment . . . claims for "whistleblowing" or retaliation . . . ; and claims for violation of any federal, state, or other governmental law, statute, regulation or ordinance.

(Doc. No. 17-1, Agreement ¶ 5(A)). The Agreement also provided that it "shall survive the termination of the Employee's employment, and may only be revoked or modified in a written document which expressly refers to the 'Agreement to Arbitrate Claims,' and which is signed by both the Employee and by an authorized representative of the Company." (Id. at ¶ 10.) As for consideration, the Agreement provided:

> In making this Agreement, Employee recognizes that employment with and continued employment with the Company and the Company's agreement to arbitrate claims against Employee serve as good and valuable consideration for the mutual obligations contained herein. Employee enters into this Agreement knowingly and voluntarily. Employee agrees that final and binding arbitration will lead to more expedient and cost-effective resolution of any claim against the company.

(Id. ¶ 2).

Nelson resigned on May 2, 2016, but returned as the General Sales Manager on May 14, 2016. The new position had significantly more responsibility (including supervisory authority over the sales force), and a commensurate increase in pay. Nelson did not sign a new arbitration agreement upon his return to work, and claims he was not informed that the Agreement signed when he first went to work some five to six months earlier would cover his renewed employment at Carl Black.

On July 30, 2016, Nelson was terminated. He alleges his termination was in retaliation for his whistleblowing regarding the sale of vehicles under active safety recalls. He also claims that he was retaliated against on the basis of his race and because he opposed the hostile work environment to which he had been subjected. He filed suit in this Court under Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 2000e, *et seq.*; 42 U.S.C. § 1981, the Moving Ahead of Progress in the 21st

Century Act ("MAP-21), 49 U.S.C. § 30171; and the Tennessee Human Rights Act ("THRA" ), Tenn. Code Ann. § 4-21-101, *et seq.*

Carl Nelson contends that all of the claims advanced by Nelson are encompassed by the Agreement. Accordingly, and after filing an Answer, it filed the present Motion pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*

## II. Legal Discussion

So far as relevant, the FAA provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a court determines that the cause of action is covered by an arbitration clause, it must stay the proceedings until the arbitration process is complete. 9 U.S.C. § 3.

There is a strong federal policy in favor of arbitration, Huffman v. Hilltop Cos., LLC, 747 F.3d 391, 394 (6th Cir. 2014), and "[i]t is well-established that any doubts regarding arbitrability should be resolved in favor of arbitration." Glazer v. Lehman Bros., 394 F.3d 444, 451 (6th Cir. 2005) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)). Further, "[t]he FAA ensures that arbitration agreements are as enforceable as any other contract." Nat'l Labor Relations Bd. v. Alternative Entm't, Inc., 858 F.3d 393, 400-01 (6th Cir. 2017) (citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006)).

Because "[t]he FAA does not . . . make arbitration agreements more enforceable than other contracts, however, they "may be voided for the same reasons for which any contract may be invalidated, including forgery, unconscionability, and lack of consideration." Glazer, 394 F.3d 444,

450 (6th Cir. 2005). They may also be challenged if the dispute falls outside the scope of agreement, Fazio v. Lehman Bros., Inc., 340 F.3d 386, 395 (6th Cir. 2003) because "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*," Granite Rock Co. v. Int'l Bhd. of Teamsters, 130 S. Ct. 2847, 2856 (2010) (emphasis in original). Therefore, "'[b]efore compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement.'" Masco Corp. v. Zurich Am. Ins. Co., 382 F.3d 624, 627 (6th Cir. 2004) (quoting Javitch v. First Union Sec., Inc., 315 F.3d 619, 624 (6th Cir. 2003)).

Nelson raise both types of challenges here. He claims the Agreement is unenforceable due to the lack of mutual assent upon his return to work at Carl Black. He also argues that his MAP- 21 claim is outside the scope of the Agreement. Prior to reaching those substantive issues, however, the Court must address a procedural argument that Nelson also raises.

**A. Waiver**

Nelson argues that Carl Black has waived the right to arbitrate through its litigation conduct by failing to raise the arbitration issue as an affirmative defense in its Answer. His sole support is the following language from the Sixth Circuit's decision in Johnson Assoc. Corp. v. HL Operating Corp., 680 F.3d 713 (6th Cir. 2012):

> [A] defendant's failure to raise arbitration as an affirmative defense shows his intent to litigate rather than arbitrate. The filing of an answer is, after all, the main opportunity for a defendant to give notice of potentially dispositive issues to the plaintiff; and the intent to invoke an arbitration provision is just such an issue.

Id. at 717. That language, however, appeared in the context of a discussion about whether arbitration was an affirmative defense under Fed. R. Civ. P 8(c), with the court observing that

"defendants routinely raise the right to arbitration in their answer, whether it is technically required by Rule 8 or not." Id.

Even though the Sixth Circuit in Johnson ultimately found the right to arbitrate was waived, it did so where, not only had defendant failed to raise it in the answer, defendant asserted a counterclaim for breach of contract, engaged in formal settlement negotiations, and "actively scheduled and requested discovery, including depositions," that resulted in the production by plaintiff of "1,151 pages of responsive documents and a 4.11 gigabyte hard drive full of responsive information." Id. at 719-720. In arriving at its conclusion, the Sixth Circuit noted that "'waiver of the right to arbitration is not to be lightly inferred,'" and reiterated that "'a party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) "delaying its assertion to such an extent that the opposing party incurs actual prejudice.'" Id. at 717 (citation omitted) (collecting cases).

Apart from a failure to raise the arbitration issue in the Answer, this case bears no resemblance to Johnson. Even before suit was filed, and while the matter was before the Equal Employment Opportunity Commission, Carl Black's counsel sent Nelson's counsel an email that stated: "As you know, it is Carl Black's position that the arbitration agreement is enforceable and Carl Black intends to enforce it." (Doc. No. 21-1 at 3). At the initial case management conference held just two months after the Complaint was filed and less than one month after the Answer, Carl Black raised the issue of arbitration and inquired whether it should move to amend the Answer or file a Motion to Compel Arbitration. Counsel was informed by the Magistrate Judge that "it would

be cleaner to simply file a motion, or words to that effect." (Doc. No. 25-1, Bissinger Aff. ¶ 4).[1] The Motion for Stay was filed two weeks later.

The record before the Court simply does not allow for a finding that Carl Black took action "completely inconsistent" with an intent to enforce the Agreement, or that Nelson has suffered any "actual prejudice" as a result of the month an a half delay between the filing of the Answer and the Motion to Stay. See Precision Builders, Inc. v. Olympic Grp., L.L.C., 642 F. App'x 395, 400 (5th Cir. 2016) (collecting cases for the proposition that "failing to assert the right to demand arbitration in an answer or counterclaim does not necessarily waive the right, standing alone"); Zuckerman Spaeder, LLP v. Auffenberg, 646 F.3d 919, 923 (D.C. Cir. 2011) (stating that "[a] defendant who delays seeking a stay pending arbitration until after his first available opportunity might still prevail on a later stay motion provided his delay did not prejudice his opponent or the court"); Healthcare Mgmt. Sys., Inc. v. Syntel Ltd., 2013 WL 3834043, at *1 (M.D. Tenn. July 24, 2013) (distinguishing Johnson, collecting cases for the proposition that "delay of five months is not extraordinary," and finding no waiver even though request was made four months after case was removed and some discovery had been conducted).

Accordingly, the Court finds no waiver and turns to the merits of Carl Black's Motion.

**B. Enforceability**

Nelson argues that the Agreement is unenforceable due to the lack of mutual assent because he did not re-sign the Agreement or enter into a new one when he returned to Carl Black to serve as its General Sales Manager. In fact, he contends that "the parties never discussed arbitration, an

---

[1] The initial case management was not transcribed and the representations as to what was said at the conference are presented in the form of an affidavit filed by counsel for Carl Black. Nelson does not challenge those representation.

arbitration agreement, or the waiver of any rights" when the parties negotiated his renewed employment. (Doc. No. 20 at 5). In this respect, he argues that this case is "markedly similar," (id.), to Frank v. 84 Components Co., 2002 U.S. Dist. LEXIS 11218 (S.D. Ind. June 8, 2002).

In Frank, plaintiff went to work for 84 Lumber in July 1999, at which time she filled out assorted employment paperwork and signed an arbitration agreement that covered "[a]ny statutory or common law disputes or controversies" arising out of her employment. Id. at *2. She was terminated in May 2000, but deemed eligible for rehire. When plaintiff was rehired in August 2000, she did not sign another arbitration agreement. The "contested issue [wa]s whether the arbitration agreement from 1999 [could] be applied to claims arising when there was no separate arbitration agreement for [plaintiff's] second period of employment." Id. at *4. Noting, "[a]t bottom, the question is one of contract interpretation," the court found that "the objective indications of [the parties'] intentions – in words or deeds" did not suggest that the arbitration agreement would continue. Id. at *6.

Noticeably absent from the discussion in Frank is any indication that the arbitration agreement contained language stating that it survived the termination of employment, as is the case here. Such language, however, was present in Elsisy v. Pep Boys-Manny, Moe & Jack, 2008 WL 5262720, at *3 (M.D.N.C. Dec. 17, 2008), where the court found an arbitration agreement binding, even though plaintiff had only signed the agreement when he was hired at the Pep-Boys store in Raleigh, North Carolina, but not when he was rehired at the company's Greensboro store. Even so, and while Elysisy is more analogous than Frank, it nevertheless is distinguishable because the arbitration agreement contained a clause – not present here – that stated if the employee was subsequently re-employed by the company, the agreement would remain in full force and effect.

Id.

There is a case, cited by neither party, that is virtually on all fours with the facts at hand. In Cummins v. Town & Country Ford, Inc., 2011 WL 1403179, at *1 (S.D. Ind. Apr. 13, 2011), plaintiff was hired as a finance manager at Town and Country in 2005, at which time he signed an arbitration agreement. He left that position in 2008, but returned to the dealership as the Sales Manager several month later. He did not sign an arbitration agreement upon his return and, claims it was never discussed. In response to the dealership's motion to compel arbitration, plaintiff argued that he "was not bound by the arbitration agreement because it only applied to his first term of employment and he never signed or was provided with a second arbitration agreement during his second term of employment." Id. at *2. Rejecting that argument, the court wrote:

> The pertinent parts of the Agreement state:
>
> > This Policy shall constitute the entire agreement between the Employee and Company for the resolution of Covered Claims. The submission of an application, acceptance of employment or the continuation of employment by an individual shall be deemed to be acceptance of the dispute resolution program. No signature shall be required for the policy to be applicable.
> >
> > REQUIREMENTS FOR CHANGE IN AGREEMENT. This Agreement to arbitrate shall survive the termination of my employment. It can only be revoked or modified by mutual consent evidenced by a writing signed by both parties that specifically states an intent to revoke or modify this Agreement.
>
> In this case, as stated, the policy is the entire agreement between the parties. When [plaintiff] returned to employment with Town & Country, this constituted "acceptance of employment" or "the continuation of employment" under the Agreement. No additional signature was required to accept the "mutual promise to resolve claims." The language specifically provides that the Agreement "survives" the termination of employment, and there is no evidence that the Agreement was revoked by "mutual consent evidenced by a writing signed by both parties" as called for in the Agreement.

Id. at *2-3 (internal citation to record omitted).

Similarly in this case, the parties signed an agreement in which they agreed (1) "to the final and binding resolution by arbitration of any claim"; (2) "that employment with and continued employment with the Company . . . serves as good and valuable consideration"; (3) that the Agreement "shall survive the termination of the Employee's employment"; and (4) that the Agreement could "only be revoked or modified in a written document . . . signed by both the Employee and an authorized representative of the company." (Doc. No. 17-1 ¶¶ 1, 2, 10). Given that language, and further given "[t]he fact that the plaintiffs face a difficult task in rebutting the strong presumption in favor of arbitration 'by clear implication' and with 'positive assurance,'" Huffman, 747 F.3d 395, the Court finds the Agreement is valid and enforceable, notwithstanding that it was not re-signed or specifically renewed when Plaintiff resumed his employment with Carl Black.

In reaching this conclusion, the court recognizes that "because arbitration agreements are fundamentally contracts, [a court] review[s] the enforceability of an arbitration agreement according to the applicable state law of contract formation." Herbender v. Bickford Sen. Living Corp., 656 F.3d 411, 416 (6th Cir.2011) (citation omitted). However, the law of Tennessee is not unlike that in Indiana (Frank and Cummins) or North Carolina (Elsisy) in that ordinary contract principles are used to determine whether an enforceable agreement to arbitrate exists. Wofford v. M.J. Edwards & Sons Funeral Home Inc., 490 S.W.3d 800, 809 (Tenn. Ct. App. 2015). Under Tennessee law, "[m]utual promises are sufficient to constitute consideration," Estate of Brown, 402 S.W.3d 193, 200 (Tenn. 2013), and "an arbitration agreement is not a contract of adhesions" unless the employee shows that he "would be unable to find a suitable job if he refused to agree to arbitrate," Howell v.

Rivergate Toyota, Inc., 144 F. App'x 475, 478 (6th Cir. 2005).

As for the gap in employment, the parties have cited, and the Court has found, no Tennessee cases directly on point. It is significant, in the Court's view, however, that the gap in employment was only 12 days,[2] and the Complaint is broadly worded and can be read to cover both periods of his employment with Carl Black. In this regard, the Complaint states that "Plaintiff is a former employee of defendant" without reference to the dates of his employment, and alleges assorted wrongs that occurred "[d]uring plaintiff's employment," (Doc. No. 1 Complaint ¶¶ 1, 8 & 9). The Court, therefore, finds that the Agreement is enforceable, particularly since "[a]rbitration agreements are favored in Tennessee by both statute and case law." Glassman, Edwards, Wyatt, Tuttle & Cox, P.C. v. Wade, 404 S.W.3d 464, 466 (Tenn. 2013). However, because (as discussed below) the Agreement reserves for the arbitrator gateway issues as to arbitrability and enforceability, the arbitrator is free to revisit the issue of whether the Agreement applies to Nelson's second period of employment at Carl Black.

**C. Scope**

Nelson argues that his MAP-21 claim is beyond the scope of the Agreement.[3] More

---

[2] This is significantly less than the "approximately six months" gap in Cummins where the court still found the arbitration agreement enforceable even though noting that "a better practice would [be to] require employees returning to employment to re-sign the Agreement[.]" 2011 WL 1403179, at *3.

[3] So far as it applies to this case, MAP-21 prohibits an automobile manufacturer, part supplier, or dealership from "discharg[ing] an employee or otherwise discriminat[ing] against an employee" who, among other things, (1) provides "information relating to any motor vehicle defect, noncompliance, or any violation or alleged violation of any notification or reporting requirement," (2) files a proceeding relating to any alleged noncompliance or alleged violation of any notification or reporting requirement, or (3) has "objected to, or refused to participate in, any activity that the employee reasonably believed to be in violation of any provision of" the National Traffic and Motor Vehicle Safety Act of 1966, 49 U.S.C. § § 30101, *et seq*. 49 U.S.C. § 30171(A). Remedies for alleged violations include reinstatement, backpay, compensatory damages, and attorney's fees. Id. §§ (B) & (E).

specifically, he relies upon the following language from the statute:

> (E) De novo review. With respect to a complaint under paragraph (1), if the Secretary has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee, the employee may bring an original action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy, and which action shall, at the request of either party to the action, be tried by the court with a jury. The action shall be governed by the same legal burdens of proof specified in paragraph (2)(B) for review by the Secretary.

49 U.S.C. § 30171(b)(3)(E) (emphasis added). Nelson submits that "the plain language of the statute, which is cast in mandatory as opposed to permissive terms, unambiguously and unequivocally demonstrates both that this Court has original jurisdiction of Mr. Nelson's MAP-21 claim and that the case 'shall,' at his request, 'be tried by the court with a jury,' as opposed to by an arbitrator without a jury." (Doc. No. 20 at 7). While there is no case law analyzing the foregoing language, let alone analyzing it in the context of an arbitration agreement, the Court rejects Nelson's position for a number of reasons.

First, the Agreement states that "[t]he claims covered . . . include, but are not limited to, the enforceability and/or interpretation of this Agreement [and] whether a claim is arbitrable[.]" (Doc. No. 17-1, Agreement ¶ 5(a)). While "[d]elegation to an arbitrator of gateway issues does not mean that a federal court should automatically grant a motion to compel arbitration . . . a party seeking to avoid the effects of a delegation provision must 'challenge[ ] the delegation provision specifically.'" Danley v. Encore Capital Grp., Inc., 2017 WL 710470, at *3 (6th Cir. Feb. 22, 2017) (quoting Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 72 (2010)). Where, as here, a "party fails to do so, a court must treat the delegation provision as valid and enforce it as written." Id.

Second, Nelson reads the statute as vesting exclusive jurisdiction in the district court, but that

is likely too broad a reading. Rather, and as confirmed by cases discussing virtually identical language in other statutes (such as the Federal Railway Safety Act) that language is best characterized as a "kick-out" option meant to aid a complainant in receiving a prompt disposition of his or her claim. That is, "[o]nce an employee exercises this option by filing in district court, the Secretary loses jurisdiction of the controversy," which helps to "'ensure that claim brought within the Department of Labor are processed within a reasonable time.'" Despain v. BNSF Ry. Co., 186 F. Supp. 3d 988, 991 (D. Ariz. 2016) (quoting Gonero v. Union Pac. R. Co., 2009 WL 3378987, at *6 (E.D. Cal. Oct. 19, 2009)); see, Mullen v. Norfolk S. Ry. Co., 2015 WL 3457493, at *8 (W.D. Pa. May 29, 2015) (discussing "kick out" provision and stating that "the FRSA includes a limited grant of jurisdiction to federal district courts").

Third, the Supreme Court has long held that the "duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights." Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220, 238 (1987). This includes statutory employment claims where the right to a jury trial attaches. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 123 (2001); ("The [Supreme] Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law."); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) (holding that Age Discrimination in Employment Act claims are subject to arbitration); Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 658 (6th Cir. 2003) (observing that "[t]he Supreme Court has made clear that statutory rights, such as those created by Title VII, may be subject to mandatory arbitration . . . if the arbitral forum permits the effective vindication of those rights).

Fourth, "[t]he burden is on the party opposing arbitration . . . to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." Shearson/Am. Express, Inc. , 482 U.S. at 227. This may be accomplished showing that the text of the statute or its legislative history precludes arbitration, or by showing there is an inherent conflict between arbitration and the purpose of the statute at issue. Id. Other than to point to the language of 49 U.S.C. § 30171(b)(3)(E), which is far from conclusive, Nelson has failed to show why the whistleblower provision of that statute is exempt from arbitration, even though statutory whistleblower claims have been found to be arbitrable in assorted other employment contexts. See e.g., Guyden v. Aetna, Inc., 544 F.3d 376 (2d Cir. 2008) (holding that whistleblower claims brought under Sarbanes-Oxley Act, 18 U.S.C. § 1514A, are arbitrable); Turcotte v. Baptist Healthcare of Oklahoma, Inc., 2005 WL 2789208, at *3 (N.D. Okla. Oct. 19, 2005) (ruling that claims under the whistleblower provision of the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd(i), are subject to arbitration). In fact, when Congress restricts the use of arbitration it usually does so with "clarity," such as in the Dodd-Frank Wall Street Reform and Consumer Protection act, 15 U.S.C.§ 1226(a)(2), which provides that "[n]o predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section." CompuCredit Corp. v. Greenwood, 565 U.S. 95, 103–04 (2012). Moreover, MAP-21 provides remedies including reinstatement and lost compensation to employees who have been wrongly discharged for whistleblowing activities, much like the many other federal statutes that prohibit retaliation and discrimination in employment that are nevertheless subject to arbitration.

Finally, and as previously noted, "'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Masco Corp., 382 F.3d at 627

(citation omitted). "Where the arbitration clause is broad, only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators." Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc., 350 F.3d 568, 577 (6th Cir. 2003) (quoting AT & T Techs., Inc. v. Commc'n Workers of Am.475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). Here, not only is the arbitration agreement broad, it specifically lists claims for "'whistleblowing' or retaliation," (Doc. No. 17-1, Agreement ¶ 5(A)), as being subject to arbitration. Thus, Nelson's MAP-21 claim is not beyond the scope of the Agreement.

## IV. Conclusion

On the basis of the foregoing, the Court will grant Carl Black's "Motion for Stay Pending Arbitration.

An appropriate Order will enter.

WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE